```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                     EASTERN DIVISION
```

```
KELLY WHITENER,                  )
                                 )
     Plaintiff,                  )
                                 )
v.                               )    No. 23-cv-01126-TMP
                                 )
KILOLO KIJAKAZI,                 )
ACTING COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,         )
                                 )
     Defendant.                  )
```

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

On June 26, 2023, Kelly Whitener filed a complaint seeking judicial review of a Social Security decision.[1] Whitener seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits. (ECF No. 14.) For the following reasons, the Commissioner's decision is AFFIRMED.

### I. BACKGROUND

**A. Procedural History**

On June 16, 2016, Whitener filed an application for a period of disability and disability insurance benefits. (R. at 14.) On

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on August 14, 2023, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10.)

July 3, 2018, Administrative Law Judge ("ALJ") Brian Dougherty determined that Whitener was not under a disability from December 8, 2015, through the date of his decision, and the Appeals Council denied review. (Id.)

Whitener protectively filed an application for disability insurance benefits under Title II of the Social Security Act ("Act") on July 30, 2019, alleging disability beginning August 15, 2016. (R. at 146.) A hearing was held on November 10, 2020, and the ALJ denied Whitener's application. (R. at 13.) However, the Appeals Council remanded the order directing ALJ Marty Turner to provide Whitener with a new hearing because the hearing record was defective. (Id.) On August 29, 2022, the ALJ held a telephone hearing. (Id.)

In his decision, the ALJ explained the applicability of the prior decision by ALJ Dougherty entered on July 3, 2018. (Id.) The ALJ reasoned that he could only evaluate Whitener's impairments from July 4, 2018, the day after the decision, because the Appeals Council denied review, meaning that the issue of disability during the previously adjudicated period was not subject to further review. (Id.) ALJ Dougherty in the July 3, 2018 decision found that Whitener had the residual functional capacity ("RFC") to perform work activity at the light exertional level, but with the following limitations:

> [S]tanding and walking for a total of 4 hours per day; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; frequently reach, handle, and finger; and should avoid concentrated exposure to industrial hazards, including unprotected heights, moving machinery, and the operation of motor vehicles[.]

(Id.) Therefore, the ALJ was bound by the prior decision with regard to the previously adjudicated time period. (Id.) However, the ALJ explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt a finding of a claimant's [RFC] or other finding required at a step in the sequential evaluation process from the final decision by an ALJ or Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding, or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding. AR 98-4(6), Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997). Based on the evidence submitted during the current period under consideration, the evidence supports changes in claimant's severe impairments.

(Id.)

B.  **The ALJ's Decision and the Five-Step Analysis**

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Whitener was not disabled. (R. at 27.) At the outset, the ALJ found that Whitener last met the insured status requirements of the Act on June 30, 2021. (R. at 16.) At the first step, the ALJ found that Whitener has not engaged in substantial gainful activity since

the alleged onset date of August 15, 2016, through her date last insured on June 30, 2021. (Id.)

At the second step, the ALJ concluded that Whitener had the following severe impairments: "degenerative disc disease; foot disorder status post surgeries; hepatitis; hernia; and obesity[.]" (Id.) During the second step, the ALJ made the following findings regarding Whitener's obesity:

> [Whitener] has a height of 5'3" and weight of 190 pounds. This corresponds to a body mass index of 33.6%, which is considered Level I obesity, under medical criteria established by the National Institutes of Health (*Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults*, NIH Publication No. 98-4083).
>
> While the levels of obesity recognized by the *Clinical Guidelines* do not correlate with any specific degree of functional loss, obesity can cause, complicate, or contribute to impairments in the musculoskeletal, respiratory, and cardiovascular body systems and/or to mental impairments such as depression. Therefore, the undersigned must determine whether [Whitener's] obesity, alone or in combination with his other impairments, significantly limits her physical or mental ability to do basic work activities (SSR 19-2p). Based on the medical record, the undersigned has determined [Whitener's] obesity does exacerbate her symptoms and does cause more than minimal limitations. Accordingly, [Whitener's] obesity is severe.

(R. at 17.) The ALJ also specifically addressed at length Whitener's depression and anxiety, finding that they do not cause more than a minimal limitation on her ability to perform basic mental work activities and are therefore not severe. (R. at 17-20.)

At the third step, the ALJ concluded that Whitener's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) Accordingly, the ALJ had to next determine whether Whitener retained the RFC to perform past relevant work or could adjust to other work. The ALJ found that Whitener:

> through the date last insured . . . had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she is limited to: standing and walking for a total of 4 hours per day; no restrictions on sitting; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; frequently reach, handle, and finger; and should avoid concentrated exposure to industrial hazards, including unprotected heights, moving machinery, and the operation of motor vehicles.

(Id.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ discussed Whitener's testimony and the medical record. The ALJ summarized her testimony as follows:

> [Whitener] alleges a history of radiating neck pain, foot pain, abdominal pain, weakness, decreased mobility, dyspnea, and fatigue since the alleged onset date. She alleges pain, decreased ranges of motion, and fatigue

> ultimately hinder her ability to walk, stand, lift, carry, drive, or perform postural activity. She also alleges pain, confusion, sadness, and nervousness causes decreased focus, poor sleep, and fatigue, which hinder her ability to complete tasks. She complains she cannot perform household responsibilities or participate in social activities as she did in the past. Overall, [Whitener] contends her life has detrimentally changed because of her impairments. Whitener reports spending most of her time resting at home.
>
> [Whitener] alleges a history of chronic neck and foot pain, weakness, and fatigue extending into the prior period of adjudication. She alleges decreased focus, poor sleep, decreased ranges of motion and fatigue ultimately hinder her ability to walk, stand, lift, carry, drive, or perform postural activity. She also alleges pain and fatigue hinder her ability to complete tasks. She complains she cannot perform household responsibilities or participate in social activities as she did in the past. Overall, [Whitener] contends her life has detrimentally changed because of her impairments. [Whitener] reports spending most of her time resting at home.

(R. at 21) (internal citations omitted). The ALJ concluded that Whitener's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Whitener's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Id.)

The ALJ considered Whitener's medical records and treatment history. The ALJ first considered the medical evidence for the previously adjudicated period, from December 8, 2015 through July 3, 2018:

> In the previous period of adjudication, MRI's of [Whitener's] cervical spine revealed degenerative disc

> disease including: small central disc bulge at C4-5, but with no herniation, nerve root impingement, stenosis, or acute osseous abnormalities; cord myomalacia and disc bulge at C6-7. Notably, there was no recommendation for neck surgery, just conservative treatment with medication and monitoring. Regarding her feet, [Whitener] underwent foot surgery in December 2015 and postoperative reports in January 2016 reveal success with orthotics, proper shoes, and use of the CAM boot. Physical exams in the prior period also confirm weight levels consistent with obesity.
>
> Treatment notes document allegations of neck and back pain, history of foot pain, numbness and tingling in her extremities, and decreased ranges of motion since the prior decision. However, there is no objective or diagnostic imaging in the current period of adjudication to support material differences since the prior decision. In fact, there was no other diagnostic imaging of [Whitener's] cervical spine or bilateral feet since the last ALJ decision. Overall, the medical evidence better supports the [RFC] than [Whitener's] allegations.

(R. at 22) (internal citations omitted).

The ALJ then reviewed her medical treatment and concluded the following:

> Since the prior ALJ decision, [Whitener] sought treatment with various physicians and caregivers at Frix-Jennings Clinic, Jackson Clinic, and Jackson General Hospital. The physicians recorded [Whitener's] complaints of neck and back pain diagnosed degenerative disc disease, foot disorder status post surgeries, and obesity. Despite [Whitener's] allegations of debilitating post-surgical pain and restriction, the physicians opted to treat [Whitener] conservatively through medication, injection therapy, exercising, and monitoring. In fact, since the prior decision, there was essentially no change in severity of [Whitener's] impairments. Contrary to [Whitener's] allegations, the physicians routinely observed [Whitener] as alert, oriented, and in no acute distress. Frix-Jennings treatment notes consistently reveal stability through medication management and monitoring. In July 2018, and shortly after the prior ALJ decision, [Whitener]

> explicitly admitted to improved activity with medication compliance. In September and November of 2018, physicians gave injection and advised her of proper use of her body mechanics to reduce pain. They also gave her physical therapy type exercises to do perform at home.
>
> The improvement and stability continued into 2019 and 2020. In those two years, [Whitener] recorded essentially the same findings at each visit. [Whitener] was alert, oriented, and in no acute distress. Again, during each visit, [Whitener] admitted that medication was effective at controlling symptoms and she reported improved activity with medication. In May 2019, [Whitener] her current medications and treatment for pain and muscle spasms did "significantly help with daily symptoms" so much so she requested refills. By December 2019, [Whitener's] pain was described as "stable" and [Whitener] was "tolerating treatments well." From January 2020 through her last visit in October 2020, [Whitener] was again noted with effective symptom management through medication and improved activity.

(R. at 22–23) (internal citations omitted). Based on these records, the ALJ found that the objective evidence supports the RFC above.

Regarding Whitener's hepatitis and hernias, the ALJ noted that she received treatment from caretakers at the Jackson Clinic, Frix Jennings Clinic, and Jackson General Hospital. (R. at 23.) The records indicate that the caretakers diagnosed her with hepatitis and two hernias. (Id.) In August 2021, she was diagnosed with a bilateral inguinal hernia, and she underwent surgical repair in August 2021. (Id.) In February 2022, she underwent a surgery to repair an umbilical hernia and a reinjury of the bilateral inguinal hernia. (Id.) Whitener was assessed some temporary lifting restrictions that fell within the parameters of the RFC above. The

ALJ found that the second surgery was effective because of limited subsequent treatment and no evidence of the hernias reemerging. (Id.) Further, the ALJ found that she was "routinely observed as alert, oriented, and in no acute distress during subsequent visits" and "reported lifting heavy objects, including a large amount of chicken feed." (Id.) The ALJ concluded that the hernias were diagnosed and repaired within a twelve-month period and that "[a]ny residual limitations would be within the parameters of the assigned RFC." (Id.) The ALJ explained that he "reviewed the applicable evidence, which includes surgically repaired hernias and autoimmune hepatitis, but finds the objective evidence supports the [RFC] above and there is no support for greater restriction." (Id.)

The ALJ then considered treatment Whitener received in April 2021 to address abdominal pain and liver dysfunction. (Id.) The ALJ explained:

> Due to an elevated liver function test, a Fibroscan was performed. The scan revealed a finding of "probable cirrhosis" and a liver biopsy was ordered. The liver biopsy revealed that [Whitener] does not have cirrhosis. The biopsy findings were compatible with autoimmune hepatitis. [Whitener's] treating physicians ultimately determined that [Whitener] had a blocked biliary stent. The biliary stent was removed on May 20, 2021. After the stent was removed, [Whitener's] liver functioning tests improved as did [Whitener's] symptoms. By November 2021, [Whitener's] liver functioning test results had returned to the normal range. While [Whitener] was acutely symptomatic due to this issue from March to May 2021, the records do not support an uncontrolled or disabling limitations for a 12-month period. Any residual

      limitations would be within the parameters of the assigned RFC.

(Id.) (internal citations omitted).

The ALJ then considered two medical evaluations that Whitener participated in from Dr. Peter Gardner. (Id.) The first exam took place in September 2020, and the second exam took place in May 2022. (Id.) The ALJ observed that Dr. Gardner was not a treating source and that the exams were not for treatment; rather, "[t]hey were designed for an opinion regarding [Whitener's] disability claim" and that "[t]he second exam was performed nearly a year after the expiration of the date last insured." (Id.) Although the ALJ concluded that the report was not performed within the applicable time period, he still considered the report because it is "very similar to the first report although the 2022 report is less limiting than the 2020 report." (R. at 24.) The ALJ made the following observations from Dr. Gardner's reports:

> In both, Dr. Gardner opined limitations noting [Whitener] is capable of occasionally lifting 10 pounds with very limited ability to stand or walk. On the 2020 report prior to the expiration of DLI, Dr. Gardner noted "less than occasional" use of the hands bilaterally for reach, handle and feel. Since occasional is defined by the form as "up to 1/3 of an 8-hr workday," then less than occasional would presumably be no (or virtually no) reach, handle and fingering. He also notes the same "less than occasional" with regards to postural limitations and environmental limitations and no more than "moderate" noise. The 2022 report is slightly less restrictive on manipulative abilities rating reaching and feeling as occasional and handling as "less than occasional." There is no explanation regarding why there is any limitations on noise exposure. As for the other

>limitations, Dr. Gardner references foot and neck pain as his support. Essentially, Dr. Gardner opines that [Whitener] can lift no more than 10 pounds but cannot use her hands to reach or handle in order to pick up those 10 pounds, nor can she engage in any postural movements. He opines she can stand/walk only 10 minutes at a time and needs a cane. Yet, she can't use her hands to reach or handle the cane. There is no mention of the use or necessity of a cane in his examination notes.

(Id.)

The ALJ then compared Dr. Gardner's reports with the treatment records and found that his opinions were not persuasive. (Id.) The ALJ explained as follows:

>Treatment records from [Whitener's] providers do not support the necessity of a cane. Dr. Gardner's opinions are overly restrictive when compared to [Whitener's] treatment history at Frix Jennings, which primarily consisted of conservative monitoring and the administration of medication with notations of the effectiveness of the treatment. Frix Jennings notes also do not support an increase or worsening of feet or spinal symptoms since the prior period of adjudication as discussed above. It appears Dr. Gardner's specific limitations are heavily influenced by [Whitener's] subjective complaints. He does not perform any imaging, nor does he specifically reference any objective imaging in the file to support his opinions. His opinions are not internally consistent as noted above. It is not consistent with [Whitener's] treatment records. It is vastly inconsistent with the other opinions of record. It is inconsistent with [Whitener's] reported activities. For example, an April 2022 medical record noted [Whitener] lifting heavy bags of chicken feed. Such is inconsistent with Dr. Gardner's opinions on lifting, carrying, use of hands and postural limitations. It is also inconsistent with her reports that she drives, and shops by computer. Function reports note that she uses her hands to makes bows for her granddaughter. Records note [Whitener] reporting babysitting her grandchildren. As detailed above, the medical records from her treating physicians do not

>     support Dr. Gardner's conclusions. Dr. Gardner's
>     opinions are not persuasive.

(Id.) (internal citations omitted). The ALJ concluded that the record does not support a conclusion that Whitener's impairments "are of the type to preclude work within the parameters of the [RFC] above." (Id.)

The ALJ also concluded that there are inconsistencies between Whitener's allegations, testimony, and the record. (Id.) The ALJ observed that, although Whitener complained of decreased attention and focus, "she maintained adequate attention, concentration, persistence, and pace throughout her hearing and application process." (Id.) Whitener claims that her impairments have forced her to give up things she enjoys and prevented her from participating in activities that she did prior to the onset of her impairments. (Id.) However, the ALJ concluded that there "is very little evidence in the record suggesting a medical reason for [Whitener] to cease those activities" and that Whitener engages in "some daily activities that exceed or fall within the parameters described in the [RFC]" such as maintaining hygiene, preparing simple meals, babysitting her grandchildren, spending time with her family, driving, and shopping for groceries. (R. at 24–25.) Based on the record, the ALJ concluded that the evidence of daily activities and Whitener's allegations of intensity and persistence of her limitations are not consistent. (R. at 25.)

The ALJ then summarized the medical findings for the prior, already adjudicated time period:

> State agency medical consultants, Carolyn Parrish, M.D., and Glenda Knox-Carter, M.D., opined [Whitener] is limited to a light range of exertional work with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk (with normal breaks) for a total of 4 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasional squatting; and occasional overhead reaching with bilateral upper extremities. The consultants based their opinion on [Whitener's] daily activities, history of success with surgery, and the diagnostic evidence of [Whitener's] back and feet, and the conservative treatment consisting of monitoring and medication. [Whitener] cares for herself, visits with others, and babysits her grandchildren, revealing she can perform work within the parameters opined by the consultants. However, the same evidence reveals their opinion on overhead reaching is overly restrictive. With this minor exception in mind, the opinions of Dr. Parrish and Dr. Knox-Carter are mostly consistent with the record, supports the [RFC], and are persuasive.

(Id.) (internal citations omitted). Having considered all of the evidence, the ALJ concluded that the RFC set forth above is more consistent with the medical findings than those alleged by Whitener. (Id.)

At the fourth step, the ALJ determined that, through the date last insured, Whitener was unable to perform any past relevant work. (Id.) At the fifth step, the ALJ concluded that, through the date last insured, considering Whitener's "age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Whitener] could have

- 13 -

performed." (R. at 26.) At the hearing, the vocational expert ("VE") testified that, considering all of the factors, Whitener could perform the following jobs: garment sorter, marker, information clerk, callout operator, order clerk, and spotter. (R. at 26–27.) In sum, the VE testified that there are approximately 324,000 jobs in the national economy that Whitener could perform. (Id.) The ALJ found the VE's testimony persuasive and concluded that, because there are significant jobs that exist in the national economy that Whitener can perform, a "finding of 'not disabled' is therefore appropriate[.]" (R. at 27.)

On September 21, 2022, the ALJ issued a written decision detailing the findings above. The Appeals Council denied Whitener a request for review. (R. at 1.) Whitener now seeks judicial review of the ALJ's decision, arguing that the ALJ's finding that she could perform light work is not supported by substantial evidence because the ALJ failed to properly consider her obesity in determining the parameters of the RFC. (ECF No. 14.)

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

- 14 -

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not

try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   Articulation of the Effects of Obesity**

Whitener argues that the ALJ's RFC finding is not supported by substantial evidence because he failed to adequately explain the impacts of her obesity on the ALJ's RFC as required by Social Security Ruling 19-2p. (ECF No. 14 at PageID 1726.) Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). They represent "precedent final opinions and orders and statements of policy and interpretations" that the Social Security Administration adopted. Id. Social Security Rule 19-2P outlines "how we establish that a person has a medically determinable impairment of obesity and how we evaluate obesity in disability claims under Title II and XVI of [the Act]." SSR 19-2P, 2019 WL 2374244 (May 20, 2019). The ruling specifically directs ALJs to "consider the limiting effects of obesity when assessing a person's RFC." Id. at *4. The ruling notes that "the combined effects of obesity with another impairment(s)

may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." Id. "Where a plaintiff disagrees that the analysis of obesity is adequate, [she] must further meet the 'burden of showing specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC.'" Montagna v. Kijakazi, No. 20-1227-TMP, 2022 WL 565601, at *3 (W.D. Tenn. Feb. 24, 2022) (quoting Lumpkin v. Comm'r of Soc. Sec., No. 1:20-CV-01849-DAP, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021)).

The ALJ explicitly cited SSR-192P in explaining that he "must determine whether [Whitener's] obesity, alone or in combination with [her] other impairments, significantly limits her physical or mental ability to do basic work activities" and concluded that, "[b]ased on the medical record, the undersigned has determined [Whitener's] obesity does exacerbate her symptoms and does cause more than minimal limitations. Accordingly, [Whitener's] obesity is severe." (R. at 17.) "SSR 19-2P only requires that obesity be considered and that the conclusion reached regarding its effects be explained." Montagna, 2022 WL 565601, at *4. Further, Whitener has failed to point to any evidence to show that her obesity limits her in a way that is inconsistent with the medical record and the ALJ's RFC determination. The undersigned finds that the ALJ

properly considered SSR 19-2P and that the ALJ's RFC determination is supported by substantial evidence.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Tu M. Pham<br>
TU M. PHAM<br>
Chief United States Magistrate Judge

December 20, 2023<br>
Date